**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**


**STANLEY E. MONTGOMERY**

**VS.**                                    **CIVIL ACTION NO. 2:13cv269-KS-MTP**

**CAROLYN W. COLVIN**


**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATIONS AND DISMISSING**
**CASE WITH PREJUDICE, ETC.**

This cause is before this Court on Defendant's Motion [10] to affirm the decision of the

Commissioner, the Report and Recommendations [13] of Magistrate Judge Michael T. Parker,

the Objections [14] to the Magistrate Judge's Report and Recommendations, the Commissioner's

Response [15] thereto, Plaintiff's Reply [16], and the record and pleadings currently on file

herein, and the Court after considering the same does hereby find as follows, to-wit:

**PROCEDURAL HISTORY**

On March 12, 2010,[1] Plaintiff filed applications for disability insurance benefits and

supplemental security income, alleging a disability onset date of February 4, 2009. (Administrative

Record [8], at 31; 139-146.)[2] These applications were denied both initially and upon reconsideration.

---

[1] The undersigned notes a discrepancy as to the date that Plaintiff filed his applications.
The ALJ decision (Doc. 8. at 28), Plaintiff's Brief [9] and Defendant's Memorandum in Support
of the Motion to Affirm the Commissioner's Decision [12] all list March 12, 2010 as the date,
while the documents in the record cited above show March 23, 2010.

[2] For ease of reference and pursuant to the Court's Order [3] directing filing of briefs, the
administrative record is cited to herein by reference to the Court's docket number and docket
page number in the federal court record and not the Administrative Record page number.

(8] at 119-124; 127-129.) Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ([8] at 134-135.)

On January 21, 2011, a hearing was convened before ALJ Charles C. Pearce. ([8] at 50-98.) The ALJ heard testimony from Plaintiff and Thomas J. Stewart, a vocational expert ("VE") ([8] at 88-94.) On February 10, 2011, the ALJ issued a finding that Plaintiff was not disabled. ([8] at 28-45.) Plaintiff appealed this decision and submitted additional evidence to the Appeals Council. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([8] at 23-25.)[3]

Plaintiff filed his Complaint on December 9, 2013, requesting an order from this Court reversing the Commissioner's final decision and directing the Commissioner to award benefits to the Plaintiff. Complaint [1] at 2. The Commissioner answered the Complaint, denying that Plaintiff is entitled to any relief.  Answer [7].  The parties having briefed the issues in this matter pursuant to the Court's Scheduling Order [3], the matter is now ripe for decision.

## MEDICAL/FACTUAL HISTORY

Plaintiff was forty-five years old at the time of the ALJ's decision on February 10, 2011. ([8] at 28, 139.) Plaintiff has a high school education and work experience as a butcher, electrician's helper, electrician and jailer. ([8] at 173; 200-07.) In his disability report, Plaintiff alleged that he has been unable to work since February 4, 2009, due to anxiety, depression, obsessive-compulsive disorder, social phobia, sleep apnea, cardiovascular disease, ulcers, acid reflux, hypertension, blurred vision, impaired hearing, dislocated disc, inflamed prostate, allergies, suicidal tendencies, and

---

[3]As described *infra*, the Appeals Council denied the Plaintiff's request for review twice – once on June 18, 2012 and again on October 15, 2013.

"hearing voices." ([8] at 172.)

The administrative record in this case contains voluminous medical documents from the Veteran's Affairs (VA) hospital in Jackson. Many of these documents reference Plaintiff's previous conditions and treatments, although those earlier records are not included. For instance, although there is no record, Plaintiff has reported that he had spinal surgery in a civilian hospital in 2001 or 2002, with a good result. He claims that the operation was microdiskectomy in the lumbar area. ([8] at 311). Plaintiff also claims that he sustained a skull fracture in 2004, although there is no record of treatment. Plaintiff claims that he also suffers from ulcers, but, likewise, his recent medical records do not reflect any treatment for ulcers.

VA Records from 2008 reflect that Plaintiff has been diagnosed with sleep apnea and uses a c-pap to sleep. ([8]-832; 861). However, Plaintiff had a somnoplasty performed in March 2009 and bilateral turbinate reduction performed in April 2009, and both procedures seemed to improve his sleep apnea. ([8] at 929; 944 ).

Beginning in February 17, 2009, Plaintiff began monthly psychological and psychiatric treatment at the VA Mental Health Out-Patient Clinic in Jackson. ([8] at 960; *see generally* B6F & B7F). At the clinic, Plaintiff has been treated for obsessive-compulsive disorder, anxiety and panic disorder.[4] Multiple physicians noted that Plaintiff reported obsessive-compulsive behavior, such as using only one trash can in the house, vacuuming after anyone walks into his home, and turning on the kitchen light three times. ([8] at 850; 928). The physician notes show that Plaintiff's symptoms

---

[4]The records reflect that Plaintiff saw multiple physicians at the VA hospital. Some summarily noted that Plaintiff suffered from panic disorder ([8] at 933), while others indicated that Plaintiff did not present the requisite symptoms to meet the criteria for a panic disorder. ([8] at 939).

were eased by going to church and ([8] at 778) and playing with his niece and nephew ([8] at 783; 791).

On January 25, 2010, Dr. Brandin Ross examined Plaintiff in connection to complaints about rapid heart beat. Dr. Ross's notes from that appointment reflect that in 1987, Plaintiff had been diagnosed with sinus tachycardia due to using Afrin nasal spray and was advised to discontinue use.[5] Dr. Ross noted that Plaintiff used several medications to control his blood pressure, heart rate and hypertension. Dr. Ross conducted an echocardiogram and noted that it failed to reveal cardiomegaly or ventricular hypertrophy, and the Plaintiff denied any chest pain. Plaintiff's pulse was 53 beats per minute. Dr. Ross concluded that Plaintiff's hypertension was well-controlled and that his tachycardia was asymptomatic. ([8] at 1029-1031).

Dr. Todd Coulter performed a consultative examination of Plaintiff on May 1, 2010. The report reflects that Plaintiff complained of a dislocated lumbar, a history of degenerative disc disease and lower back pain. Dr. Coulter noted that Plaintiff used a single prong cane, but that the cane was not prescribed. Under the diagnosis section of the report, Dr. Coulter listed "degenerative joint disease in the lumbosacral spine." Under the functional assessment section, Dr. Coulter opined that Plaintiff had no conditions that would impose limitations. Dr. Coulter found that Plaintiff was limited to climbing, balancing, stooping, kneeling, crouching and crawling only occasionally, but that Plaintiff had no manipulative activities or environmental limitations. He found that Plaintiff could stand or walk six hours in an eight hour day, and carry fifty pounds occasionally and twenty

---

[5]However, at a July 14, 2010 appointment with Dr. Raymond Kimble, Plaintiff complained that his anxiety was connected to tachycardia. Dr. Kimble noted that there was no record had actually been diagnosed with tachycardia, based on primary care provider notes and EKGs going back to 2007. ([8] at 1026).

4

pounds frequently. However, in a contradictory finding, Dr. Coulter opined that Plaintiff needed a cane for balance in all types of terrain. ([8] at 255-59).

At some point in May 2010, Plaintiff was diagnosed with Type II diabetes mellitus and hypertriglyceridemia.[6] ([8] at 682). However, on August 25, 2010, Plaintiff was discharged from the diabetes clinic, as his diabetes was well-controlled. ([8] at 605).

On May 20, 2010, Plaintiff was examined by state agency medical consultant Dr. Martha D'Ilio, who completed a Comprehensive Medical Status Examination. At the interview, Plaintiff reported that he could bathe and dress himself without assistance, slept six hours a night, and prepared his own meals. Plaintiff reported that he cared for his dogs and goes to the VA, church and the grocery store every week. He reported that due to his obsessive compulsive disorder, he frequently cleans his house.

Dr. D'Ilio noted that Plaintiff was appropriately dressed and groomed, that he drove himself to the interview, and that he made adequate eye contact throughout the interview. His speech was clear, logical and goal oriented. She noted that Plaintiff was taking a substantial number of medications. There was no evidence of a formal thought disorder, psychotic features, or anxiety. Plaintiff did report some symptoms of depression, claimed he thought of suicide innumerable times, and asserted that he has a repeating hallucination in which he sees a hand coming through the door. However, Dr. D'Ilio found that Plaintiff's thought processes were coherent and content appropriate. Dr. D'Ilio indicated that Plaintiff's mood disorder might stem from the extensive medications he was taking and due to his chronic pain. Dr. D'Ilio concluded that Plaintiff would have moderate

---

[6]Hypertriglyceridemia is a condition in which triglyceride levels are elevated, often caused or exacerbated by uncontrolled diabetes mellitus, obesity, and sedentary habits.http://emedicine.medscape.com/article/126568-overview (last visited January 20, 2015).

difficulty performing routine, repetitive tasks, interacting with coworkers, or receiving supervision due to his current mental state. ([8] at 262-67).

On May 21, three weeks after the examination with Dr. Coulter in which he brought an non-prescribed cane, Plaintiff went to the VA hospital and requested a prescription for a cane. He was given one. ([8] at 408).

On June 14, 2010, Plaintiff was examined by state agency medical consultant Dr. James Griffin, who completed a Physical Residual Functional Capacity Assessment. Dr. Griffin assigned Plaintiff a primary diagnosis of mild degenerative disc disease, and a secondary diagnosis of obesity. Dr. Griffin opined that Plaintiff could frequently lift twenty-five pounds and occasionally lift and/or carry fifty pounds. Dr. Griffin also opined that Plaintiff could stand, walk and sit for a total of about six hours in an eight-hour workday. Dr. Griffin noted that Plaintiff had no manipulative, visual, communicative or environmental limitations. ([8] at 268-75). However, Dr. Griffin found that Plaintiff should be limited to only occasional kneeling or crouching due to his alleged pain. Dr. Griffin noted that Dr. Coulter had previously found that Plaintiff needed a cane for balance and pain purposes, but indicated that this finding was inconsistent with Dr. Coulter's opinion that Plaintiff could carry 50 pounds and occasionally and twenty pound frequently. ([8] at 268-75).

Between May 27, 2010 and June 17, 2010, Plaintiff received treatment three times at the VA hospital, twice as a walk-in and once for a medication management appointment, in which he encountered Dr. James Clayton Brister.[7] At the first visit on May 27, Dr. Brister noted that Plaintiff

---

[7]In addition to the three visits described *infra*, the record reflects that Dr. Brister was made aware of advice given to Plaintiff by a VA nurse via telephone call. Dr. Brister was not involved with the call, the record only shows that the "receipt was acknowledged" by Dr. Brister. ([8] at 656).

was seen as a walk-in, and that Plaintiff stated he was worried that his diabetes may be linked to Risperidone, a medication that he was taking. Dr. Brister recommended discontinuing the medication to observe if there was any symptom change. ([8] at 659-60). The June 14, 2010 encounter was another walk-in visit. The record is signed by Dr. Brister, and reflects that Plaintiff was "doing well" and denied any psychotic symptoms, but gave a long history of his obsessive-compulsive symptoms and complained that a certain medicine was making him hungry. Dr. Brister noted that Plaintiff was alert, very neat, goal oriented and suffered from no hallucinations or delusions. He recommended a different medication in response to Plaintiff's complaints. ([8] at 644-45). The June 17, 2010 visit was for medication management. The record reflects that Dr. Brister co-signed the record of Plaintiff's visit with Dr. Maria A. Scarbrough, and thus it is unclear as to who actually examined Plaintiff. The record lists the encounter time at ten minutes, and reflects that Plaintiff was doing well on his medication, and was in a good mood and mentally alert. It also reflects that Plaintiff did not report suicidal or homicidal thoughts nor auditory or visual hallucinations. ([8] at 633-38).[8]

On June 20, 2010, Plaintiff was examined by state agency medical consultant Dr. David Powers, who completed a Mental Residual Functional Capacity Assessment. Although Dr. Powers opined that Plaintiff was moderately limited in his understanding, memory, concentration, social interaction and adaption, he concluded: "There is nothing to suggest a severe mental problem of any kind. . . .[T]hese limitations should be considered but, taken exclusively, would not prevent competitive work on sustained basis. From the mental perspective, this claimant retains the ability

---

[8]The record from this visit referenced two previous visits in which Plaintiff received treatment from Dr. Brister.

to work." ([8] at 290-93).

On July 14, 2010, Dr. Samuel Richardson conducted a Compensation and Pension examination of Plaintiff's spine at the VA hospital. Dr. Richardson reported that Plaintiff complained of pain in his lumbar area, pointing to the L4-5 area. Dr. Richardson stated that Plaintiff denied using bedrest for pain relief and does all activities of daily living, for the most part, unassisted. Dr. Richardson noted that Plaintiff uses a cane, but that Plaintiff did not bring it to the examination. He reported that the Plaintiff has flare-ups precipitated by stooping , and that Plaintiff had subjective pain at the end of left and right lateral flexion of the thoracolumbar spine. Dr. Richardson's study of an x-ray taken January 5, 2010, revealed mild disc disease of L4-5 and L5-S1. He was not able to estimate Plaintiff's ability to function without undue speculation. ([8] at 311-12).

On the same day, Dr. Raymond Kimble conducted a mental health exam of the Plaintiff. Dr. Kimble opined that Plaintiff had poor concentration, obsessive thoughts and poor social functioning that would impair his work ability, but that the overall impairment is mild.  Dr. Kimble opined that Plaintiff suffered from panic disorder, and had a Global Assessment of Functioning ("GAF") of 70.[9] ([8] at 308-09).

On October 19, 2010, Dr. Kimble conducted another mental health examination of the Plaintiff, and found that depression, schizophrenia, obsessive compulsive disorder, and social phobia could not be diagnosed. ([8] at 306).

---

[9]The Global Assessment of Functioning assigns a clinical judgment in a numerical fashion to an individual's overall functioning level. Impairments in psychological, social and occupational/school functioning are considered, but those related to physical or environmental limitations are not. The scale ranged from zero to one hundred. *See* Global Assessment of Functioning, Access Behavior Health, available at https://www.omh.ny.gov/omhweb/childservice/mrt/global_assessment_functioning.pdf.

## BURDEN OF PROOF

In *Harrell v. Bowen*, the Fifth Circuit detailed the shifting burden of proof that applies to

disability determinations:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.  Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled.  In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):
>
> > 1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> >
> > 2.  An individual who does not have a 'severe impairment' will not be found to be disabled.
> >
> > 3.  An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> >
> > 4.  If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
> >
> > 5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

862 F.2d 471, 475 (5th Cir. 1988).  The claimant bears the burden at the first four steps, but the

burden thereafter shifts to the Commissioner at step five. Once the Commissioner makes the

requisite showing at step five, the burden shifts back to the claimant to rebut this finding.  *Perez v.*

*Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005).  A finding that a claimant "is disabled or not disabled

at any point in the five-step process is conclusive and terminates the . . . analysis."  *Harrell,* 862

F.2d at 475 (citations omitted).

## ADMINISTRATIVE LAW JUDGE'S ANALYSIS

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2010.  At step one of the evaluation,[10] the ALJ found that Plaintiff had not engaged in substantial gainful employment since February 4, 2009, the alleged onset date. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, lumbar disc disease, obstructive sleep apnea, depression, anxiety and obsessive-compulsive disorder. ([8] at 33). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Part 4, Subpart P, Appendix 1. ([8] at 35). In order to make a determination at step four, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC").[11] The ALJ found that:

> the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.15679b) and 416.967(b)[12] except he is limited to

---

[10]The ALJ applied the evaluation process set forth in 20 C.F.R. §§ 404.1520(b)-(f) and 416.92(a).

[11]"Residual Functional Capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 416.945.

[12]

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) and § 416.967(b).

> occasional crouching, crawling, stooping, climbing, kneeling and balancing.
> He should not be exposed to unprotected heights or hazardous machines. He
> is limited to simple work instructions, simple work tasks, and simple job
> decisions. He can interact casually with coworkers and the general public,
> but interaction with the general public should not be a primary work task. He
> can receive supervision that is not confrontational and he can adapt to work
> routine, but changes in work routine must be gradual.

([8] at 37).

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work as an electrician/electrician's helper (medium in exertion demand) or meat cutter (heavy in exertion demand), because the exertion demands of his past work exceed his RFC. ([8] at 43). Finally at step five, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy. The ALJ based this conclusion on Plaintiff's age, educational background, work experience and RFC, and the testimony from the VE. These jobs include small products assembler, light courier and motel/hotel housekeeper. Accordingly, the ALJ found that Plaintiff was not disabled. ([8] at 43-44).

## APPEALS COUNCIL REVIEW

As outlined above, Plaintiff appealed the ALJ's decision and submitted additional evidence to the Appeals Council that was not before the ALJ.[13] Specifically, Plaintiff submitted a Mental Impairment Questionnaire (MIQ)[14] dated April 7, 2011, from Dr. James C. Brister. ([8] at 1033-1038).

In the MIQ, Dr. Brister opined that Plaintiff suffers from major depression and exhibits

---

[13]20 C.F.R. § 404.970(b) permits a claimant to submit new evidence to the Appeals Council.

[14]The document has the subtitle "Medical Source Statement and Listings."

symptoms, *inter alia*, of poor memory, social withdrawal or isolation, and delusions/hallucinations. Dr. Brister reported that Plaintiff had weekly panic attacks and suffered from chronic affective disorder. Dr. Brister also opined that Plaintiff had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, extreme deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and one or two episodes of decompensation of extended duration.[15] Finally, Dr. Brister reported that Plaintiff's impairments would likely caused the Plaintiff to be absent from work more than three times a month. ([8] at 1033-38). Plaintiff submitted the MIQ in an effort show that he met or equaled a listed impairment.

The Appeals Council first denied Plaintiff's request for review on June 18, 2012. However, on October 15, 2013, the Appeals Council set aside that action to consider the additional evidence provided by the Plaintiff. ([8] at 5). Despite Plaintiff's new evidence, the Appeals Council denied Plaintiff's request for review a second time. ([8] at 5). The Appeals Council stated,

> In looking at your case, we considered the reasons you disagree with the decisions and the additional evidence listed on the enclosed Order of Appeals Council.[16] We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence of the record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision."

([8] at 6).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to inquiry into whether there

---

[15]This opinion is in reference to criteria of the mental impairments listings in 20 C.F.R. §§ 404.1520 (a)(4)(iii) and 416.920(a)(4)(iii); *see also* 20 C.F.R. pt. 404, Subpart P, Appendix 1 § 12.00.

[16]The enclosed order referenced Dr. Brister's MIQ. ([8] at 8).

12

is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id.* at 164 (citations omitted). However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## PLAINTIFF'S OBJECTIONS AND ANALYSIS

Plaintiff files three distinct objections to the Report and Recommendations of Judge Parker. They will be addressed as set forth in Plaintiff's written Objections.

*OBJECTION NO. I*

*Mr. Montgomery respectfully submits that the Magistrate improperly  reweighed the*

*evidence in determining that the Appeals Council properly considered Dr. Brister's mental impairment questionnaire (MIQ) and applied an improper standard in failing to remand Mr. Montgomery's case to the Appeals Council in light of same.*

Plaintiff argues appropriately, that the Appeals Council will review a case if, in pertinent part, "the actions, findings, are conclusions of the administrative law judge are not supported by substantial evidence," or if the Appeals Council receives new and material evidence and the ALJ's "action, findings, or conclusions is contrary to the weight of the evidence currently of record." 20 CFR 404.970, 20 CFR 416.1470 (14 pages 1 and 2).  The thrust of Plaintiff's argument in this objection is that a mental impairment questionnaire (MIQ) performed by Dr. Brister contradicted the ALJ's findings (Step 3-5), rendering the Appeals Council's denial erroneous and contrary to law. It is noted by this Court that Dr. Brister's MIQ makes substantial findings that are substantially in conflict with  the record.  Dr. Brister is a staff psychiatrist at the Veteran's Administration Medical Center (VAMC), who saw Mr. Montgomery briefly on three occasions prior to submitting the MIQ nine months later.  It is clear that Plaintiff had a history with the VAMC, seeing the staff every month or two for four years.  Dr. Brister's opinion was a five page opinion with check boxes and little or no explanation.  Findings are as follows:  (1) major depression with poor memory; (2) appetite disturbance with weight change; (3) perceptual disturbances; (4) sleep disturbance; (5) mood disturbance; (6) social withdrawal and isolation; (7) emotional lability; (8) blunt, flat or inappropriate affect; (9) delusions or hallucinations; (10) obsessions or compulsions; (11) psychomotor agitation or retardation; (12) generalized persistent anxiety; (13) feelings of guilt/worthlessness; (14) difficulty thinking or concentrating; and (15) suicidal ideation or attempt.

The doctor stated further that Mr. Montgomery was withdrawn and experienced panic attacks

weekly and that he experienced marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, extreme deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner (in work setting or elsewhere), and one or two episodes of decompensation.  He further states that Plaintiff had a medically documented chronic affective disorder lasting more than two (2) years which has caused more than a minimal limitation in his ability to do basic work activities, with his symptoms or signs currently attenuated by medication or psychosocial support.  In effect, Dr. Brister stated that Plaintiff is a psychological wreck with numerous findings in the MIQ and other report.

The task of Judge Parker was to determine whether or not the Appeals Council failed to properly consider the additional evidence submitted to it by the Plaintiff after its original ruling. The Appeals Council denied Plaintiff's request for review.  Plaintiff claims that Dr. Brister's opinion is uncontradicted and claims that it is the opinion of a treating physician and should be given controlling weight.  The Appeals Council is to evaluate the entire record in order to determine whether the ALJ's decision is contrary to the weight of the evidence.

In considering what was before the Appeals Council the Defendant points out that the record reflects that Plaintiff saw Dr. Brister on May 27, 2010, as a walk in patient (Doc. 8 at 659).  Plaintiff was concerned about the impact of his mental health medications on his diabetes (Doc. 8 at 659). Plaintiff's mental status exam was normal (Doc. 8 at 659).  Approximately two weeks later on June 14, 2010, Dr. Brister again saw Plaintiff as a walk in patient and at that time Plaintiff described obsessive/compulsive symptoms, which Dr. Brister noted had been previously documented in Plaintiff's medical record (Doc. 8 at 644).  The mental status exam was normal (Doc. 8 at 645). Finally, Dr. Brister may have seen Plaintiff for ten minutes on June 17, 2010 (Doc. 8 at 633-38).

Plaintiff was seen for medication management (Doc. 8 at 633).  At that visit, Plaintiff reported good mood, mental alertness, good energy and good sleep (Doc. 8 at 633).  The record further notes that there were no other negative findings but, indeed, the findings were positive.  The Plaintiff argues that Dr. Brister was with the VAMC and had access to four years of records to use in writing the MIQ.  However, the Plaintiff does not point the Court to places in the record that backup the numerous maladies listed in that document.

In its task of reviewing the entire record, the Appeals Council looked at the circumstances and the record as it existed and determined not to do any further review.  Judge Parker found that this was appropriate based on the record and this Court finds that the objection voiced by the Plaintiff is not supported by the record and is without merit.

*OBJECTION NO. II*

*Mr. Montgomery respectfully objects to the Magistrate's determination that the ALJ properly assessed Mr. Montgomery's residual functional capacity Step 5.*

Plaintiff disagrees with the residual foundational capacity (RFC), found by the ALJ.  Judge Parker founds substantial evidence supporting the ALJ's residual functional capacity finding. This is not a medical assessment and the ALJ heard significant evidence regarding the Plaintiff's RFC. The issue of the cane that Plaintiff claimed to use, but did not bring to the hearing and the failure to substantially address the fact that Dr. Coulter concluded that Plaintiff could perform medium work are significant factors.   The ALJ had the benefit of the testimony, work record, and medical records of the Plaintiff, as well as the expert testimony of the vocational specialist.  The ALJ is the fact finder and weighs this evidence.  The record indicates that the ALJ properly considered the evidence of record and the determination is supported by substantial evidence, as Judge Parker

16

found.  This Court finds that this Objection by Plaintiff is not well taken.

*OBJECTION NO. 3*

*Mr. Montgomery respectfully objects to the Magistrate's determination that the vocational expert's testimony did not support a finding of disabled when posited hypothetical questions properly incorporating all limitations supported by the medical evidence and opinions.*

This Objection addresses the propriety of the ALJ's hypothetical questions and whether or not they incorporated the limitations recognized by the ALJ.  The hypothetical question incorporated limitations consistent with the ALJ's RFC finding and he was subject to cross examination.  The Court concludes that Judge Parker's determination that the questioning of the RFC and disability finding are supported by substantial evidence and this Court finds that the Objection is without merit.

## CONCLUSION

As required by 28 U.S.C. § 636(b)(1) this Court has conducted an independent review of the entire record and a *de novo* review of the matters raised by the objections.  For the reasons set forth above, this Court concludes that Montgomery's  objections lack merit and should be overruled. The Court further concludes that the Report and Recommendation is an accurate statement of the facts and the correct analysis of the law in all regards. Therefore, the Court accepts, approves and adopts the Magistrate Judges's factual findings and legal conclusions contained in the Report and Recommendation.

Accordingly, it is ordered that the United States Magistrate Judge Michael T. Parker's Report and Recommendation is accepted pursuant to 28 U.S.C. § 636(b)(1) and that the Motion to Affirm [10] the Commissioner's decision is **granted** and that the complaint  is **dismissed with prejudice**

and the denial of benefits affirmed.

      **SO ORDERED this, the <u>31st</u> day of <u>March, 2015.</u>**

                      *s/Keith Starrett*
                  UNITED STATES DISTRICT JUDGE